# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TERESA COLEMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO.: 3:17-cv-01557 |
| | ) CHIEF JUDGE CRENSHAW |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Teresa Coleman is 53 years old, illiterate, and suffers from mental health problems. She may even be mentally retarded.[1] For more than a decade, Coleman received Supplemental Security Income ("SSI") benefits, but those were terminated in February 2014 when the Department of Disability Services ("DDS") determined that she was no longer disabled. Coleman challenged the termination. After a hearing, however, an Administrative Law Judge ("ALJ") determined that Coleman's disability "ended as of March 1, 2014," and that she "has not become disabled again since that date[.]'" (Administrative Record ("A.R.") at 21).

Now before the Court is a Report and Recommendation ("R&R") (Doc. No. 26), recommending that Coleman's Motion for Judgment on the Administrative Record (Doc. No. 18) be denied, and that the termination of her benefits be approved. With all due deference, the Court

---

[1] The Court recognizes that in September 2013 there was a "terminology change from 'mental retardation' to 'intellectual disability'" in the Listing of Impairments. Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 428 n.2 (6th Cir. 2014). However, because the alleged diagnosis was made before that change and "mental retardation" is the phrase utilized by Coleman's counsel, the Court will do the same. See Peterson v. Comm'r of Soc. Sec., 552 F. App'x 533, 536 (6th Cir. 2014) (noting the change in nomenclature, but utilizing the term "mental retardation" because that phrase appeared in the record); Miller v. Comm'r of Soc. Sec., No. 17-12756, 2018 WL 4690954, at *7 (E.D. Mich. Sept. 11, 2018) ("The terms 'mental retardation' and 'intellectual disability' can be used interchangeably because they refer to the same disorder.").

will not follow that recommendation. Indeed, if ever there was a case that exemplifies error during administrative review and cries out for a remand, this is that case.

**I.**

The problems began at the very start of the administrative hearing. In response to the ALJ's inquiry as to whether there was any outstanding evidence, Coleman's attorney asserted that a report was missing from the disability file. According to counsel, that report indicated Coleman had a documented "IQ score in the 50s," and there was "a probability that mental retardation [was] a factor in the original approval of [Coleman's] claim." (A.R. at 34). The ALJ agreed. The ALJ also observed that such records should be in the file for Continuing Disability Review ("CDR") because old records need to be compared to new records when determining whether there has been an improvement in a claimant's condition. The ALJ continued:

> ALJ: I will try to see what we can track down. What we'll do is, we'll do the hearing today. We will try to track that down, and we'll get those records. If we get those records and we need to have a supplemental hearing, we will. If we meet a listing, we won't need one, – of, if – something like that. But I will try to track those down and we can correspond with you [counsel] regarding which records may or may not be relevant.

(Id.). On at least two more occasions, the ALJ indicated that he would attempt to find the old file before concluding the hearing with the following:

> ALJ: Okay. Counsel, what I will do is this, I'm going to send her for the consultative exam, because I'm going to assume that it's going to be difficult tracking this file down, or else we'd have it. But it might – but, just to be safe, we're going to go ahead and get that ball
>
> ATTY: Yes sir.
>
> ALJ: – rolling. So – I – I'd make sure you just let her know . . . But just make sure that she gets to the IQ testing –
>
> ATTY: We'll do that.

> ALJ: – and does all that. If there's any reason why we just decide it's not necessary, I'll let you know, and we'll go ahead and cancel it. There's no point in doing it if we have some documentation already. But –
>
> ATTY: Thank you.
>
> ALJ: – we'll go ahead, and I'll get that rolling. And I'll see if I can track it down. If we do the other IQ tests or anything like that, we'll just – we'll proffer it to you.
>
> ATTY: Okay.
>
> ALJ: If it's going to be favorable, I might not even bother until you – I'll just let you know.

(Id. at 61-62).

Whatever efforts may have been made to track down the old file are not apparent from the record. In any event, the record was not found or considered by the ALJ. This failure serves as Coleman's first claim of error. Addressing this alleged error, and "for the reasons stated in the Commissioner's memorandum," (Doc. No. 26 at 7), the Magistrate Judge found no deprivation of Coleman's right to due process or a full and fair hearing.

Acknowledging that the Social Security Program Operations Manual System ("POMS") provides that "review of the prior folder" is necessary when determining whether there has been medical improvement, the Magistrate Judge correctly noted that POMS is "a policy and procedural manual" for employees of the Department of Health and Human Services and "'does not have the force and effect of law.'" (Id. (quoting Davis v. Sec'y of Health & Human Servs, 867 F.3d 336, 340 (6th Cir. 1989)). The Magistrate Judge did "not view this particular lack of evidence as prejudicial to Plaintiff's right to argue for continuing disability . . . . because the evidence which Plaintiff view[ed] as crucial – the IQ scores she achieved in connection with her prior application award . . . was not the basis for the decision that she was entitled to benefits . . . and was known to the ALJ[.]"

3

(Id. at 8).

Respectfully, this is not a case where the Social Security Administration simply failed to follow the letter of its own rules. Rather, it is a case where the ALJ made repeated affirmative representations that he would make every effort to track down an old and apparently favorable file, but failed to do so. Addressing somewhat analogous circumstances when a claimant was told by the ALJ that a doctor's records would be obtained, the Sixth Circuit wrote:

> Remand is warranted in this matter because, by telling [the claimant] she would procure certain documents for the record and then failing to follow through, the ALJ effectively deprived [the claimant] of a full and fair hearing. At several points during the hearing, the ALJ told [the claimant] that she would procure records on his behalf—in particular, records from [the claimant's] most recent visit to his family physician, Dr. Wagner. . . . The ALJ assured [the claimant] that she would make sure to procure and review the missing records from Dr. Wagner "before I make any decision in this case" . . . . But the ALJ never explained the absence of additional records from Dr. Wagner in the record; in fact, there is no evidence she even sought them out.
>
> Throughout the hearing, the ALJ emphasized to [the claimant] how important the new records from Dr. Wagner were to her decision. At one point, for example, the ALJ observed, "So, it sounds like it would be pretty important for me to get Dr. Wagner's records and see what's going on." . . . Later, she told [the claimant], "Most important ... I will definitely get information from Dr. Wagner." Id. From the ALJ's remarks, it appears the records from Dr. Wagner would have – or at least could have – been of significance to her evaluation.
>
> In these circumstances, the ALJ must obtain the records or at least explain their absence. . . . *Further, beyond the normal duty to develop the administrative record, an ALJ self-imposes a special duty to obtain records by, as here, frequently noting their importance to the resolution of the claim and committing to obtaining them.* As the Ninth Circuit stated in McLeod v. Astrue, 640 F.3d 881 (9th Cir. 2011) "the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry." Id. at 885 (internal quotations omitted). To ensure that the ALJ has fulfilled his duty to conduct an appropriate inquiry, he "should include documentation of all attempts to obtain the evidence and exhibit in the record." Social Security Administration, Office of Hearings and Appeals, HALLEX 1–2–5–1, Evidence—General (2008).

Stran v. Comm'r of Soc. Sec., 611 F. App'x 271, 275–76 (6th Cir. 2015) (emphasis added).

4

As in Stran, the ALJ repeatedly suggested the importance of the missing records. In addition to the comments already quoted, the ALJ observed that "all of the evidence from the prior file may or may not be relevant. Certainly, if there's a psychological exam that shows the 12.05 – that would certainly be relevant" and that "I'm mostly interested in anything that has to do with her intellectual capacity." (A.R. at 35). Later the ALJ observed that the record before him mentioned "IQ scores in the 50s" that "it could be 12.05B"[2] and that "if I had those scores, and they were valid, it would probably cut us way short." (Id. at 40). These comments suggest, just as in Stran, the missing records "would have – or at least could have– been of significance to [the ALJ's] evaluation." Stran, 611 F. App'x at 275.

The Court recognizes that, unlike the claimant in Stran, Coleman is represented by counsel, but finds this immaterial given what transpired. Based upon what the ALJ said at the hearing, counsel could expect one of two things to happen: (1) the report would be found and could entitle Coleman to benefits; or (2) a supplemental hearing would be held, with or without requiring Coleman to submit to another IQ test. Just as the records were never found, a supplemental hearing

---

[2] Section 12.05 in the Listing of Impairments provides in relevant part:

> 12.05 Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>      \*     \*     \*
>
> B. A valid verbal, performance, or full scale IQ of 59 or less[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05

5

was never held.

## III.

After the hearing, Coleman was referred to Robert N. Doran, M.A., a Senior Psychological Examiner. Doran completed a "DDS Psychological Evaluation," that was reviewed and approved by Mark Phillips, Ph.D. The evaluation showed a verbal IQ of 52, a perceptual reasoning score of 54, a working memory score of 50, and a full-scale IQ of 46 on the Wechsler Adult Intelligence Scale, Fourth Edition. (A.R. 631). It also showed kindergarten-level accomplishment in word reading, spelling, and math on the Wide Range Achievement Test 4. (Id. at 632). These are more than consistent with counsel's suggestion at the hearing that Coleman's IQ was in the "50s." Nevertheless, the scores in the Evaluation were "considered questionable and most likely invalid" by Doran and Phillips because "Coleman may not have put further her best effort," and "[s]he gave up easily." (Id. at 631).

The Evaluation was forwarded to counsel who then drafted a handful of interrogatories for the ALJ to present to Phillips. Some of the interrogatories were directed at discovering why the DDS determined the scores were invalid and/or what made him believe Coleman did not give her best effort. The ALJ sent all but one of the 16 questions (including sub-parts) to the DDS for response within ten days (Doc. No. 363). Neither Doran or Phillips responded to the interrogatories. Instead, Gary Perry, a supervisor in DDS's Professional Relations Office, sent the ALJ a letter that read:

> Senior Psychological Examiner Robert Doran, M.A., is the CE provider who saw the claimant and did this evaluation.
>
> Mark Phillips, PhD, for whom this interrogatory request was addressed, was the co-signer of this report and did not see the claimant.

6

> DS CE providers and their so-signers do evaluations for DDS that provide objective assessments for the review of claims. Most of the questions in this interrogatory request are speculative and hypothetical in nature. These types of questions would be more appropriate for a Medical/Psychological Expert witness testimony than a DDS Consultative Examiner.
>
> DDS sees the role of the CE provider and co-signer to present objective evaluations for the assessment of claims, not to provide Expert witness testimony to interpret facets of psychological testing of speculate on hypothetical aspects of a case.

(A.R. at 353).

Apparently accepting the refusal to answer without any further inquiry, the ALJ informed counsel that Perry's letter had been received and made a part of the record. Counsel was also advised that interrogatories could be propounded, or a supplemental hearing could be requested. (A.R. at 368). Two days later, counsel sent a handful of questions to Perry directed at why he viewed the earlier interrogatories as speculative and/or hypothetical. (Doc. No. 371).

The ALJ refused to forward those interrogatories to the DDS. He did, however, allow Coleman to "request a supplemental hearing at which you would have the opportunity to appear, testify, produce witness, and submit additional evidence and written or oral statements concerning the facts and the law." (A.R. at 374). Coleman requested a hearing in writing (Doc. No. 373). None was scheduled. Instead, almost two months after the request for a supplemental hearing was made, the ALJ issued his decision approving the termination of Coleman's benefits (Doc. No. 11). The failure to answer the interrogatories and to hold a supplemental hearing form the basis for Coleman's second and third assignments of error.

In the R&R, the Magistrate Judge determined that Coleman was not deprived of due process when the ALJ failed to require answers to interrogatories, noting that whether to allow interrogatories is a matter of discretion. The Magistrate Judge also determined that Doran's

conclusions regarding the validity of the scores are "fairly self-evident" from his statements that Coleman gave up easily and "used words and phrases . . . suggesting higher scores than test scores might indicate." (Doc. No. 26 at 9). The Magistrate Judge also cited Harriman v. Commissioner of Social Security, No. 2:16-CV-00514, 2017 WL 4250072 (S.D. Oh. September 26, 2017) as "provid[ing] a good summary of the law relating to when an ALJ's refusal to submit interrogatories to a consultative examiner is a due process violation[.]" (Id.).

In Harriman, the court ordered a remand after the ALJ failed to submit interrogatories to a consultative psychological examiner who examined the claimant after the administrative hearing, and opined that the claimant's mild to moderate mental limitations did not preclude all work activity. In finding a denial of due process, the court observed:

> Similar to cross-examination, interrogatories provide the plaintiff "the opportunity to present all of his evidence and to confront the evidence against him." . . . This Court agrees with both the Commissioner and [the claimant] that the decision to submit interrogatories generally falls within the discretion of the ALJ. However, in social security cases, "due process requires that a social security disability claimant have the opportunity to cross-examine a reporting physician where reasonably necessary" to fairly and fully develop the record. . . . This is particular[ly] pertinent when the reporting physician's examination is conducted post-hearing, because "when evidence is gathered post-hearing at the initiation of the [ALJ] a heightened danger exists that the claimant may not have the opportunity to cross-examine the physician if needed." . . . If the claimant is wrongly denied this opportunity to cross-examine, substantial evidence may not support the ALJ's decision.

Harriman, 2017 WL 4250072, at *5.

Here, the ALJ exercised his discretion in Coleman's favor by forwarding the interrogatories to DDS for answer, but a supervisor in the Professional Relations Officer refused them. Whether the ALJ could have pressed the matter is not for the Court to decide. If the ALJ was inclined to simply accept DDS' response, he could have, and should have, held the supplemental hearing that was offered. Instead, the ALJ was twice left with an indication that Coleman had scored in the 50s

8

on an IQ test, but the only one that "counted" was unilaterally declared to be of questionable validity.

## IV.

"'[D]ue process' has never been, and perhaps can never be, precisely defined" but "the phrase expresses the requirement of 'fundamental fairness.'" Lassiter v. Dep't of Soc. Servs. of Durham Cty., 452 U.S. 18, 24 (1981). Although the Sixth Circuit has declined to join the majority of circuits that hold there is an absolute right to cross-examination in social security benefits cases, it has refused to do so only to the extent that "cross-examination is available where reasonably necessary to the full development of the case." Flatford v. Chater, 93 F.3d 1296, 1307 (6th Cir. 1996); see Adams v. Massanari, 55 F. App'x 279, 286 (6th Cir. 2003) (citation omitted) ("Due Process requires that a social security hearing be 'full and fair.'"). Here, what began with the understanding that Coleman was likely mentally retarded for purposes of the Listing of Impairments was seemingly confirmed by a subsequent test, only to be erased with the stroke of a pen. Fundamental fairness dictates that Coleman be allowed to question the holder of that pen.

## V.

The R&R (Doc. No. 26) is **VACATED**. Coleman's Motion for Judgment on the Administrative Record or in the Alterative for Remand ((Doc. No. 18) is **GRANTED** to the extent she request a remand.

Accordingly, this case is **REMANDED** to the Commissioner of Social Security for further consideration consistent with this opinion. At a minimum, this shall include (1) a documented, good faith search for the missing records, and (2) a supplemental hearing if those records are not found.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE